IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD A. ADAMS,

    Plaintiff,

       v.

IBM CORP.,

    Defendant.

CIVIL ACTION FILE
NO. 1:05-CV-3308-TWT

ORDER

    This is an ERISA action involving a defined contribution retirement benefit plan.  It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 13], and the Plaintiff's Motion for Summary Judgment [Doc. 16].  For the reasons set forth below, the Defendant's Motion for Summary Judgment is GRANTED, and the Plaintiff's Motion for Summary Judgment is DENIED.

I. BACKGROUND

    The Plaintiff, Richard A. Adams, was an employee of the Defendant IBM Corporation ("IBM") and a participant in IBM's Personal Pension Plan ("the Plan"). In May of 2003, Adams retired from IBM.  Under the Plan, he was entitled to a retirement benefit.  IBM calculated the benefit by reference to a Personal Pension Account ("PPA").  Every month, a participant's PPA accumulated "pay credits" at a

rate of 5% of the employee's salary and "interest credits" at a rate of one percentage point higher than the rate of return on one year treasury securities.  When a participant retired, he could withdraw the account balance as a lump sum, convert the balance into an immediate life annuity, or defer the receipt of a lump sum or a life annuity until a later date.  If the participant elected to defer receipt of a lump sum or a life annuity, he continued to accumulate interest credits until his PPA balance was withdrawn or converted into a life annuity.  The Plan did not pay interest on a lump sum distribution beyond the participant's normal retirement age of 65.

The Plan required the participant to immediately elect the distribution of the PPA account balance -- or to "commence the benefit" -- after the employee's separation from IBM.  The parties agree that Mr. Adams did not formally elect one of the Plan's optional forms of payment within a month following his departure from IBM.  He had a dispute with IBM about the calculation of his PPA account balance and did not want to accept a lump sum while litigation involving the Plan was pending in another district.  Through correspondence, Mr. Adams sought interest that allegedly accumulated between May 2003 and September 2005.

The Plan Administrator, Kenneth Morrissey, denied the request on the grounds that Mr. Adams failed to make a timely election distribution when he retired on May 31, 2003, and because the Plan did not pay any interest to a terminated participant on

a lump sum distribution beyond the participant's normal retirement age of 65.  When Adams separated in May 2003, he was 67 years old.

On December 2, 2005, the Plaintiff filed this action *pro se* in the Magistrate Court of DeKalb County, Georgia against IBM seeking interest in the amount of $15,000 on his lump sum retirement benefit of $151,000. Mr. Adams is demanding interest payments from the date of his retirement, May 2003, through September 2005, when he ultimately accepted the lump sum retirement benefit.  On December 29, 2005, IBM removed the case to this Court based on preemption under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 502(a)(1)(B). There are no facts in dispute and the case is ripe for resolution by summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

### A. Standard of Review

In an ERISA action such as this one, the Court must determine the standard by which to review an administrator's decision to deny a benefits claim.  ERISA itself does not provide a standard of review for decisions of a plan administrator.  The Eleventh Circuit has adopted three standards for judicial review of an administrator's benefits determination: (1) *de novo* review where the plan administrator is not afforded discretion; (2) arbitrary and capricious standard when the plan grants discretion to the plan administrator; and (3) heightened arbitrary and capricious standard where there is a conflict of interest.  Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1134 (11th Cir. 2004); Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1449-50 (11th Cir. 1997).

### B. Denial of Benefits

The Eleventh Circuit has adopted a multi-step approach for reviewing virtually all ERISA plan benefit denials.  See Williams, 373 F.3d at 1138; HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982 (11th Cir. 2001).  In this instance, the Court must first apply a *de novo* standard of review "to determine

whether the claim administrator's benefits-denial decision is 'wrong' (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision." <u>Williams</u>, 373 F.3d at 1138. If the Court determines, however, that the administrator's decision was wrong, it determines what level of review is appropriate. <u>Id.</u> "'Wrong' is the label used by [Eleventh Circuit] precedent to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation." <u>HCA Health Servs.</u>, 240 F.3d at 994 n.23.

Here there is no need to determine what level of review is necessary, because in this instance, the administrator's decision was not "wrong."[1] The Plaintiff argues that he is entitled to the interest that should have accrued on his retirement benefit from the period between May 31, 2003, the date of his retirement, and September 2005, the date on which he made his election to receive a lump sum benefit. The terms of the Plan dictate otherwise. First, Mr. Adams admits that he failed to formally commence the benefit in the month following his retirement. ("[A] Participant shall

---

[1]It is worth noting that the Plan documents give the Plan Administrator discretion in determining eligibility for interest on a lump sum benefit. Indeed, the Plan authorizes the Administrator to promulgate and enforce such rules and regulations as is necessary or appropriate, the authority to interpret the Plan, to resolve ambiguities, and to determine the appropriate retirement income for beneficiaries. (Def.'s Mot. for Summ. J., at 3).

elect . . . a Benefit Commencement Date [by] the first day of the month next following the later of the Participant's termination of employment with IBM . . . ") (Def.'s Mot. for Summ. J., Ex. C, at 35.)  The Plaintiff argues that his failure to commence the benefit entitled him to a larger interest payment.  He relies upon language in section 1.6.5 of the Summary of the Plan Description ("SPD"), which states that the "[t]he portion of your account balance that you defer will remain in the plan and continue to earn interest credits each month until your account balance is distributed in its entirety."  (Def.'s Mot. for Summ. J., Ex. C, at 21.)

The Plaintiff's interpretation overlooks the previous paragraph, which explicitly requires a participant to "elect to defer" before one can take advantage of such a deferment.  Mr. Adams admits that he made no such election.  Thus, Mr. Adams is not entitled to obtain interest payments for the period following the date on which he was required to elect his benefits.  Even if Mr. Adams had made his election in a timely fashion, the Plan requires that he begin to receive his payments no later than the first month after his date of departure.  (Def.'s Statement of Undisputed Facts in Support of its Mot. for Summ. J., at 11.)  In other words, the Administrator was well within the bounds of the Plan's mandates when he denied Mr. Adams's request for interest payments for the period of time following his retirement.  In addition, the explicit

terms of section 1.6.8.1 of the SPD bar participants from receiving interest credits beyond age 65 if they retire after their 65th birthday.

Although the Plaintiff does make a vague reference to age discrimination in his Motion for Summary Judgment, this claim is not properly before the Court. No age discrimination claim was asserted in the Complaint.[2]

## IV. CONCLUSION

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment [Doc. 16] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. 13] is GRANTED.

SO ORDERED, this 10 day of October, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[2]Furthermore, the Defendant argues that the Plan is a lawful bona fide retirement plan authorized under 29 U.S.C. § 623(f)(2)(B) of the Age Discrimination Act.